2013 Ark.App. 368

**Shannon MADISON and Gary Knuckles, Appellants**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES; Minor Children, Appellees.**

No. CV–13–53.

Court of Appeals of Arkansas.

June 5, 2013.

Deborah R. Sailings, Arkansas Public Defender Commission, for appellant Shannon Madison.

Janet Lawrence, for appellant Gary Knuckles.

Tabitha B. McNulty, County Legal Operations, for appellee Arkansas Department of Human Services.

Chrestman Group, PLLC, by: Keith L. Chrestman, for appellees C.M., M.M., S.M., C.K., & D.M.

ROBERT J. GLADWIN, Chief Judge.

In separate briefs, appellants, Shannon Madison and Gary Knuckles, contend that the Craighead County Circuit Court erred in terminating their parental rights because the evidence was insufficient to prove that termination was in the best interest of the children. Knuckles also argues that he was not provided the requisite services by the Arkansas Department of Human Services (DHS). We affirm.

The five children involved in this case were born to Madison—CM (12/17/98); DM (11/29/00); MM (7/21/03); SM (9/17/04); and CK (1/19/06). Knuckles is the biological father of CK, and Dennis Madison is the biological father of the remaining four.[1] DHS filed a petition for emergency custody of all five children on June 24, 2010, alleging in an attached affidavit that on June 21, 2010, Madison was riding in the car with her mother, who was driving, and the car was stopped by police. The five children were in the car and were not wearing seat belts. Madison was found to be hiding crystal methamphetamine under the seats, and both she and her mother were arrested. The children were described as having body odors and not dressed or groomed well—three did not have on shoes. Madison was charged with possession of crystal methamphetamine with intent to sell, and her mother was charged with possession of marijuana. Madison tested positive for crystal methamphetamine. Knuckles, who was not in the car at the time, refused to submit to a drug test. The affidavit fur-

---

1. Dennis Madison's parental rights are addressed in a separate termination case filed by DHS.

ther alleged that there was a true finding that Knuckles had committed sexual abuse in a separate county according to CHRIS, a database used by DHS. It further stated that there was a pending sex-abuse allegation that a fifteen-year-old relative of the family, who lives on their property, abused two of the children, CK and SM. The petition sought a declaration that the children were dependent-neglected and should be removed from parental custody. An order was signed on June 24, 2010, granting custody of the five children to DHS.

After an adjudication of dependency-neglect and three further review hearings, a permanency-planning order was filed on December 13, 2011, reflecting a June 15, 2011 hearing. The circuit court found that it was in the children's best interest that the goal of the case continue to be reunification because Madison had been complying with the case plan and court orders and had made significant measurable progress. The children had been on a trial placement with Madison since May 10, 2011, and the circuit court found that the placement had been successful to that point. Knuckles had complied with the case plan and court orders by being available for a random home visit and by submitting to random drug screens during visitation, which were negative. However, the circuit court found that Knuckles did not comply by refusing to submit to a random drug screen on May 31, 2011, which was deemed positive. The parents were ordered to continue complying with the previous orders.

A petition for termination of parental rights was filed on December 12, 2011, alleging that termination of parental rights was in the best interest of the children, taking into consideration the likelihood of adoption and the potential harm caused by returning them to their mother's custody. The petition made the same allegations as those made in the affidavit attached to the original petition for emergency custody and added that Madison had cooperated for a while and a trial placement began with her on May 10, 2011. However, that placement was disrupted due to Madison's noncompliance because she failed to maintain contact with DHS.

The petition alleged that Madison allowed Knuckles to live in the home with her and the children. DHS lost contact with Madison on June 28, 2011, and Knuckles did not maintain contact with DHS. During this time, Madison did not continue the children in counseling as ordered. DHS located the children on August 24, 2011. The petition further alleged that neither parent had obtained stable housing or employment and the children had been outside the home for more than twelve months. The petition also alleged that other factors arose after the original petition was filed, and those factors demonstrated that returning the children to their parents would be contrary to their health, safety, and welfare, and that the parents manifested an indifference or an incapacity to remedy the subsequent issues. Those issues were identified as the disrupted trial placement and Knuckles's living in the home with Madison and her children.

A fifteen-month review hearing was held on February 10, 2012, with an order filed February 21, 2012. The circuit court found that returning the children to Madison's custody was contrary to their welfare, and that it was in their best interest to remain in DHS custody. The goal of the case was changed to adoption. The circuit court found that Madison and Knuckles had not complied with the case plan because Knuckles had not established paternity, had not complied with the recommendations of the drug-and-alcohol assessment, had not maintained contact with

DHS, and had not provided proof of income or employment. Madison had not maintained contact with DHS, had not provided proof of employment or income, and had not maintained stable housing.

A termination hearing was held on June 7, 2012, and the circuit court terminated parental rights by order filed October 25, 2012, finding specifically that it was in the children's best interest, taking into consideration the likelihood that they would be adopted and the potential harm to their health and safety if returned to their parents. The circuit court found that the conditions which caused removal had not been remedied as follows:

[Both] have failed to comply with the case plan and orders of the Court. When the juveniles were removed, Gary Knuckles also lived in the home. There is a true finding of sexual abuse, specifically sexual contact, against Gary Knuckles with the victim being his older daughter. Also at the time of removal there was a pending sexual abuse allegation that the mother's brother sexually abused two of the juveniles, specifically CK and SM, and that report has since been found true. The Court adjudicated the juveniles dependent-neglected on 8/24/10 based on parental unfitness due to the mother's arrest and positive test for methamphetamine. The arrest arose during a traffic stop where the mother was observed hiding methamphetamine under the car seat. All five children were in the car. Gary Knuckles refused a drug test at the time of removal. The Court also found neglect based on the children being in the car during the arrest and all were inappropriately dressed and none were wearing seat belts. The mother did comply enough that the Court allowed a trial home placement on 5/10/11, however, that trial placement disrupted due to the mother not maintaining contact with the [DHS], and the mother allowing Gary Knuckles to live in the home with the children. [DHS] had contact with the mother on 6/28/10, and then neither Gary Knuckles or Shannon Madison had contact with [DHS]. The FSW attempted to make contact at the last known address on 5/31/11, 6/7/11, 6/22/11, and 7/11/11. The mother also did not maintain therapy for the children. The family could not be located until 8/24/11. The mother and Gary Knuckles continued to be together during and after the disrupted trial placement. Neither has maintained stable employment or housing. The housing situation is the same as when the children were removed. Mr. Knuckles has failed to comply with treatment.

. . .

The Court finds the testimony of Terri Blanchard to be credible and Shannon Madison and Gary Knuckles failure to comply with the case plan, and to show some basic level of stability demonstrate how the juveniles would be at risk of potential harm if returned to [them].

From this order terminating their parental rights, both Madison and Knuckles timely appeal.

■■■ Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543, 2010 WL 2612681. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526, 2010 WL 2522197. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of*

*Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Termination of parental rights ₆is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark.App. 328, 255 S.W.3d 505 (2007).

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark.Code Ann. § 9–27–341(b)(3)(A)(i) & (ii) (Supp.2011). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark.Code Ann. § 9–27–341(b)(3)(B). One statutory ground as set forth in the statute is that the child has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Ark.Code Ann. § 9–27–341(b)(3)(B)(i)(*a* ). Proof of only one statutory ground is sufficient to terminate parental rights. *Gossett v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.

Madison argues that the circuit court erred in finding that termination of her parental rights was in the children's best interest. Knuckles's argument is similar to Madison's, but it is applicable only to his biological child, CK. He contends that because the law favors preservation, not severance, of natural familial bonds, *Benedict v. Ark. Dep't of Human Servs.*, ₇96 Ark. App. 395, 242 S.W.3d 305 (2006), he should not have his parental rights terminated simply because he has not "jumped through every hoop that DHS placed in front of him." He reiterates that he is not seeking custody of CK but to maintain his familial connection through visitation. Knuckles also argues that DHS did not provide services to him, as it was recommended by his drug-and-alcohol assessment that he obtain outpatient drug treatment, and DHS refused to help with that expense.

We agree with DHS and the attorney ad litem that the circuit court's order terminating parental rights was not clearly erroneous. During the twenty-four months that the case was open, a trial placement with Madison took place, but Madison failed to follow the circuit court's order. Knuckles, who had a true finding of a sexual offense against his minor daughter and was a convicted felon for trading pseudoephedrine for methamphetamine, tested positive for taking illegal drugs during the pendency of the case.

In addressing Madison's and Knuckles's only challenge—the circuit court's best-interest findings—two factors must be considered: (1) the likelihood that the children will be adopted if termination is granted, and (2) the potential harm caused by continuing contact with the parents. Ark.Code Ann. § 9–27–341(b)(3)(A).

First, the circuit court found that the children were adoptable based on the evidence provided by Terri Blanchard, the foster-care supervisor, who testified that the children were adoptable. A caseworker's testimony that children are adoptable is sufficient to support an adoptability finding. *Cobbs v. Ark. Dep't of Human Servs.,* 87 Ark.App. 188, 189 S.W.3d 487 (2004).

▇ |₈Second, the circuit court's finding that the children would suffer potential harm from continued contact with the parents does not leave this court with a definite and firm conviction that a mistake was made. Neither parent was ready for custody of these five children after two years, as Knuckles wanted only visitation to continue and Madison sought in her appellate brief more time and the continuation of reunification services. On appeal, the appellate court does not substitute its own judgment or second guess the credibility determination of the circuit court; we will reverse in those cases only where a definite mistake has occurred. *K.C. v. Ark. Dep't of Human Servs.,* 2010 Ark. App. 353, 374 S.W.3d 884.

DHS and the attorney ad litem note that Knuckles's argument that DHS did not provide him with adequate services is not a best-interest argument, and it does not make sense in light of his assertion during the termination-of-parental-rights hearing that he had spent $10,000 on attorney's fees. Also, they contend that, even if they had paid for his therapy, it would not have erased his sexual-abuse finding or the fact that he was a felon who traded pseudoephedrine for methamphetamine. We agree.

Affirmed.

HIXSON and BROWN, JJ., agree.