2013 Ark.App. 406

**Leonard AUSTIN, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & Minor Child, Appellees.**

No. CV–13–165.

Court of Appeals of Arkansas.

June 19, 2013.

574

Leah Lanford, Arkansas Public Defender Commission, for appellant.

Tabitha B. McNulty, County Legal Operations, for appellee Arkansas Department of Human Services.

Chrestman Group, PLLC, by: Keith L. Chrestman, for appellee S.A.

DAVID M. GLOVER, Judge.

Leonard Austin appeals from the termination of his parental rights to his daughter, S.A. (D.O.B.12–4–07), challenging the sufficiency of the evidence supporting the trial court's best-interest and statutory-grounds findings. We affirm.

The Arkansas Department of Human Services (DHS) received an anonymous report that three-year-old S.A. was living, unsupervised, with Shawnda Harlen and Leonard Austin, her parents, while the parents used methamphetamine every day. A DHS family-service worker located S.A. living in a hotel room with Shawnda and learned from Shawnda that Leonard had been arrested for possession of methamphetamine the previous Saturday. Shawnda's drug screen tested positive for methamphetamine, benzodiazepine, and THC. DHS exercised an emergency seventy-two-hour hold on S.A. on December 3, 2010, and obtained emergency custody of S.A. on December 6, 2010, who was subsequently determined to exhibit failure-to-thrive issues, developmental delays, and hygiene needs.

On January 4, 2011, approximately one month after S.A. was taken into emergency custody, the trial court found S.A. to be dependent-neglected, ordered S.A. to remain in DHS custody, ordered Leonard to undergo paternity testing, and made reunification the goal of the case plan. S.A. remained in DHS custody through a period of reviews, and the trial court subsequently changed the case goal from reunification to adoption.

On February 24, 2012, DHS filed a petition to terminate Leonard's and Shawnda's parental rights. Following the May 21, 2012 hearing on the petition, the trial court granted termination of Shawnda's parental rights[1] but denied the petition with respect to Leonard, reasoning that he had not had adequate time to complete the offered services and to correct the conditions. As to Leonard, the trial court revised the goal to permanent custody with adoption as concurrent case goals.

On October 3, 2012, DHS again filed a petition to terminate Leonard's parental rights. At the November 5, 2012 termination hearing on the second petition, Leonard acknowledged that the reason S.A. had been adjudicated dependent-neglected was because of his and Shawnda's drug use. He also acknowledged that he had been ordered to maintain stable housing and that he had lived in a trailer with environmental issues, including nasty carpet, cockroaches, and cabinets that were falling down. He further confirmed there had been issues about family members

---

1. Shawnda initially appealed the termination of her parental rights but subsequently dismissed her appeal.

coming over and drinking and smoking, with beer cans and wine-cooler bottles lying around. Also regarding housing, he testified that since May, he had been living in a five-bedroom house, along with his sister, brother-in-law, and mother; that the brother-in-law had been to prison three or four times in Arizona for drugs and drug-trafficking charges; that his sister "might have a history in Arizona for traffic"; and that he had "plans to move out on [his] own at some point." Leonard stated that he had still not completed the information packets that were necessary for DHS to obtain background checks on all of the persons living in his house. Confirming that he had been ordered to obtain employment, he stated his employment had "been on and off." He acknowledged that he did not have a valid driver's license; that his license had been suspended for at least ten years; that it had been suspended for various reasons, including a DUI in Dardanelle, Arkansas, and an outstanding felony warrant and fines in Arizona (which he acknowledged were a problem at a previous termination hearing and yet he had still done nothing about them); and that he got around by his friends and his mom or he walked.

Leonard testified that he had been to two different rehabs; while he did not complete the program at Hope Center, he did complete the program at Freedom House in September. He admitted that following the termination hearing in May, at which time the trial court denied DHS's petition to terminate, he was tested for drugs and tested positive for THC even though he denied using drugs.

Melissa Cain, S.A.'s case worker, testified that Leonard had submitted to ordered random drug screens "off and on"; that his housing situation had been a serious concern throughout the case; that when he lived in the trailer, there were dog feces on the floor, dog urine in the carpet, and alcohol lying about in the home. She said that Leonard blamed his sister for the state of the trailer and the alcohol and reported that he had kicked his sister out because she smoked marijuana in the trailer—yet that sister was living with him in his current residence. Cain reported that Leonard had not informed DHS of his move from the trailer to the house and that she had not been able to inspect those living conditions because he was not home when she went there. She expressed concerns about his current living arrangements because there had been no background checks on the other persons living there, despite Leonard being ordered by the court to either vacate those premises or provide the necessary packet of information for background checks. Cain explained that she had personally delivered the packet to Leonard and had explained in detail what needed to be done. She stated that when he returned the packet, it was not correctly completed; that when she asked him if he wanted new ones to fill out correctly, he said that he did not—that he was only doing it because his attorney told him to. She explained that the background checks were necessary because DHS needed to make sure that S.A. would not be in jeopardy by being placed there.

Cain described Leonard's employment history and stated that he always sought work through temporary agencies, never staying long enough to get hired full time. She said that his employment was not stable and had not been for the two years she had been on the case.

She expressed concern that Leonard's housing situation was not stable; that his employment was not stable; that he had outstanding warrants in Arizona that he had taken no steps to cure; that he did not have reliable transportation; that S.A.

came to the department with failure-to-thrive issues that were ongoing; and that S.A. would need to keep appointments addressing those issues. Cain also expressed concern about Leonard's anger management, even though he had completed an anger-management course. According to her, when she tried to discuss his anger issues, he responded "by getting madder" and that he had stormed out of the building the past week, using the "F" word with children present. She stated that drug relapse was a concern—even though Leonard had essentially remained "clean" for a long time during this case, he had been a drug addict for a long time and always denied using, even when confronted with the positive drug test as recently as May.

Cain testified that DHS was seeking termination of Leonard's parental rights. She stated that S.A. had been in DHS custody for two years and that Leonard had not yet taken care of even the basic things, including housing, transportation, employment, background checks for others with whom S.A. would be sharing a residence, and outstanding Arizona warrants. She stated that S.A. had been in the care of others longer than in her parents' care and that S.A. was beginning to realize it; that S.A. would very likely be adopted; and that S.A. needs permanency and stability in her life.

Following the November 5 termination hearing, the trial court granted the petition to terminate Leonard's parental rights to S.A. by order entered on December 3, 2012. In terminating Leonard's parental rights, the trial court found that it was in S.A.'s best interest to do so, explaining that there was a high likelihood S.A. would be adopted and that there was the potential for harm to S.A.'s health and safety if she was returned to Leonard's custody. The trial court also found that two statutory grounds for termination had been es-

tablished: 1) that S.A. had been adjudicated dependent-neglected and had continued to be out of Leonard's custody for twelve (12) months, and despite a meaningful effort by the department to rehabilitate Leonard, the parent, and correct the conditions that caused removal, those conditions had not been remedied by Leonard, Ark.Code Ann. § 9–27–341(b)(3)(i)($a$), and 2) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that return of S.A. to Leonard's custody was contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, Leonard had manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate his circumstances that prevented return of the juvenile to the custody of the parent, Ark.Code Ann. § 9–27–341(b)(3)(B)(vii)($a$).

A heavy burden is placed upon the party seeking to terminate parental rights. *McDaniel v. Arkansas Dep't of Human Servs.*, 2013 Ark. App. 263, 2013 WL 1776479. It is an extreme remedy in derogation of the natural rights of the parent, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child and must give way to the best interest of the child when the natural parent seriously fails to provide reasonable care for their minor children. *Id.* In accordance with Arkansas Code Annotated section 9–27–341(b)(3), an order terminating parental rights must be based upon clear and convincing evidence, *i.e.*, proof that will produce in the fact-finder a firm conviction as to the verity of the allegation sought to be established. *Id.* On appeal, the issue before us is whether the trial court's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that

a mistake has been made. *Id.* In deciding whether a trial court's finding is clearly erroneous, we give great deference to its superior opportunity to observe the parties and to judge the credibility of witnesses. *Id.*

### Best–Interest Finding

A best-interest finding involves two factors, adoptability and potential harm. Leonard does not challenge the adoptability finding. Rather, he contends that DHS did not demonstrate that returning S.A. to his care would be potentially harmful to the child. The trial court explained its decision that there would be potential harm to S.A. by noting that Leonard lived with his sister and her husband, who have had "drug and prison issues"; that Leonard had not had stable housing and had stated that he planned to move again in five or six months; that DHS had requested information in an effort to conduct a home study on the current residence, and that Leonard had not turned in the information packet for the background checks that are required in a home study; that Leonard had outstanding felony warrants in Arizona that he had known about since February 2011, but he had not taken any action to deal with that situation; that he had not maintained employment for more than three months and had no economic stability; that following the May 2012 termination hearing, he had tested positive for marijuana, which was confirmed by two separate subsequent tests; and that he did not have a valid driver's license and had to rely upon others for transportation. We are not left with a definite and firm conviction that the trial court was mistaken in concluding that the potential for harm existed if S.A. were returned to Leonard.

### Statutory Grounds

The two grounds relied upon by the trial court in terminating Leonard's parental rights were: 1) S.A. had remained out of Leonard's care and custody for more than twelve months, and despite meaningful efforts to rehabilitate and correct the conditions that caused removal, those conditions had not been remedied; and 2) other factors had arisen after the case began, demonstrating that return of S.A. to Leonard would be contrary to the child's health, safety, or welfare.

With respect to the failure-to-remedy ground, the trial court explained that S.A. had been adjudicated dependent-neglected on January 3, 2011, due to her parents' drug use; that Leonard still did not have stable housing or employment; and that he continued to have drug issues. We find no clear error in the trial court's finding that this statutory ground for termination had been established. With respect to the subsequent-factors ground, the trial court explained that, in addition to not having stable housing or employment, Leonard had demonstrated anger issues, did not have a driver's license, did not manage his anti-depression medications well, had not completed his GED, had not completed the information packets necessary for DHS to complete its home study, had a drug relapse, and continued to have outstanding warrants in Arizona. As noted by the trial court, Leonard was not able to care for S.A. despite all the services that had been provided. We find no clear error in the trial court's finding that this statutory ground for termination had also been established.

Affirmed.

GLADWIN, C.J., and VAUGHT, J., agree.