2013 Ark.App. 431

**Heather MURRAY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES & Minor Child, Appellees.**

**No. CV–13–278.**

Court of Appeals of Arkansas.

June 26, 2013.

Janet Lawrence, for appellant.

No response.

DAVID M. GLOVER, Judge.

This is a no-merit appeal from the termination of Heather Murray's parental rights. Counsel for Murray has filed a motion to withdraw and a no-merit brief pursuant to *Linker–Flores v. Arkansas Department of Human Services,* 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6–9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals. On April 29, 2013, the clerk of our court sent a copy of counsel's motion and brief via certified mail, along with a letter informing Murray of her right to file pro se points for reversal. The packet was sent to the address for Murray provided in her counsel's certificate of service in the motion to be relieved. On May 6, 2013, the packet was returned, marked "UNDELIVERABLE AS ADDRESSED–FORWARDING ORDER EXPIRED." According to our clerk, Murray's counsel reported that she had no additional contact information. We affirm the trial court's termination of Murray's parental rights and grant counsel's motion to withdraw.

## I. *Background*

Heather Murray's parental rights to four children, J.D. (2–5–03), B.M. (11–25–03), C.M. (3–16–06), and J.S. (10–6–08), were terminated by order entered on January 4, 2013. It was stipulated as part of the termination hearing that Robert Shelton is the legal father of CM. and J.S. and that Brian Davis is the putative father of J.D. and B.M. Shelton's and Davis's parental rights were also terminated, but they are not involved in this appeal.

The children were removed from their home on September 13, 2010, with the Department of Human Services (DHS) exercising a seventy-two-hour hold because of environmental neglect, inadequate supervision, and medical neglect; emergency custody was granted to DHS on September 15, 2010. Robert Shelton was jailed within the seventy-two-hour period because of domestic battery against B.M. On November 2, 2010, the children were adjudicated dependent-neglected. The trial court found that Heather had medically and environmentally neglected the children and failed to properly supervise them. Custody was continued with DHS, and the goal was set for reunification. Heather was ordered to visit with the children once a week; to obtain and maintain stable and appropriate housing, transportation, income, and employment; to complete parenting classes; to complete a psychological evaluation and follow the recommendations; to complete a drug-and-alcohol assessment and follow the recommendations if tests were positive for any illegal drug; to submit to drug-and-alcohol testing, including hair-follicle and urine testing; and to participate in counseling, homemaker services, and other offered services.

A review hearing was held on April 12, 2011, a permanency-planning hearing on September 13, 2011, a fifteen-month review hearing on December 13, 2011, and another review hearing on May 8, 2012. At the December 13, 2011 hearing, the trial court continued custody of the children with DHS, continued the goal of reunification with a concurrent goal of adoption, and allowed for a trial home placement to begin on or about May 25, 2012. On July 10, 2012, a permanency-planning hearing was held at which time the trial court continued custody with DHS, ended the trial home placement as unsuccessful, and changed the goal of the case to adoption.

On August 21, 2012, DHS filed a petition to terminate parental rights, and the termination hearing was held on November 16, 2012. The trial court terminated the parental rights of all parents. Specifically, with respect to Heather, the trial court found that the children had been out of the parental home and custody for over twelve months (24 months), and that, while she had made some progress toward rehabilitating herself and her home, she had not complied with the court's orders and case plan in that she had not maintained regular employment, and when she was employed, it had been part time with insufficient income to care for herself and her four children. Additionally, the trial court found that she had not made a good-faith effort to obtain a G.E.D., which had been ordered to improve her ability to obtain a job that would provide the necessary income to support her children. The trial court also questioned Heather's ability to make decisions and to exercise good judgment, citing as examples repeated problems with transportation and picking up the children for visits, disobeying the trial court's order that she not allow her boyfriend to have access to the children, ceding control of most of her finances to her boyfriend, and allowing him to make the household decisions. The court also found Heather to be evasive and suspect, rendering her an incredible witness; it found that

she had not shown the necessary investment in the children's health—being ill-informed about their health needs (one of the children has a very serious heart condition), attending only a few medical appointments, staying with one of the children only fifteen minutes after he awoke from heart surgery, and failing to provide the physician-prescribed nutrition to the children, all of whom were at a very low weight for their ages and three of whom who were dangerously so. The trial court found that Heather lacked the ability to properly parent her children; that she resorted to corporal punishment (using a belt and a spatula) even though she had been trained and directed not to do so; that twenty-four months out of Heather's custody was too long from the children's perspective; that Heather had two years to resolve the issues of medical neglect and inadequate supervision that had caused removal but that she had failed to do so despite meaningful efforts by DHS. The trial court found that there was little likelihood of successful reunification in a time frame consistent with the children's needs considering the circumstances and the lack of progress. It also found that it was in the children's best interest to terminate parental rights, specifically considering the likelihood of adoption based on testimony that all the children were adoptable and that potential placements had been located for some of them already and the potential harm to their health and safety if returned to parental custody considering Heather's lack of progress.

## II. *Linker–Flores*

In *Smith v. Arkansas Department of Human Services,* 93 Ark.App. 395, 399, 219 S.W.3d 705, 707–08 (2005), our court explained the manner in which no-merit appeals from termination of parental rights cases are handled:

> In *Linker–Flores I, supra,* our supreme court held that the no-merit procedure set forth in *Anders v. California,* 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] (1967), shall apply in cases of indigent-parent appeals from orders terminating parental rights. The court held that appointed counsel for an indigent parent on a first appeal from a termination order may petition to withdraw as counsel if, after a conscientious review of the record, counsel can find no issue of arguable merit for appeal. *Id.* Counsel's petition must be accompanied by a brief discussing any arguably meritorious issue for appeal. *Id.* The indigent parent must be provided with a copy of the brief and notified of her right to file points for reversal within thirty days. *Id.* If the appellate court determines, after a full examination of the record, that the appeal is frivolous, the court may grant counsel's motion and dismiss the appeal. *Id.* If the court finds any of the legal points arguable on the merits, it will appoint new counsel to argue the appeal. *Id.* The court allowed Linker–Flores's counsel to file a no-merit brief. On November 17, 2005, the supreme court decided *Linker–Flores II,* based upon the *Anders* procedure. *Linker–Flores v. Ark. Dep't of Human Servs.,* 364 Ark. 224, 217 S.W.3d 107 (2005) (*Linker–Flores II* ). In a companion case to *Linker–Flores II,* handed down on the same day, *Lewis v. Ark. Dep't of Human Servs.,* 364 Ark. 243, 217 S.W.3d 788 (2005), the court also held that a "conscientious review of the record" requires the appellate court to review all pleadings and testimony in the case on the question of the sufficiency of the evidence supporting the decision to terminate, when the trial court has taken the prior record into consideration in its decision. The supreme court further held that only adverse rulings arising at the termination hearing need be addressed in the no-merit appeal where there has

been no appeal from the prior orders in the case, because the prior orders are considered final appealable orders pursuant to Ark. R.App. P.-Civ. 2(c)(3). Accordingly, this court must review the entire record on the issue of the trial court's ultimate decision to terminate, and, additionally, any adverse ruling made in the course of the termination hearing itself.

### III. *Discussion*

The termination of parental rights involves a two-step process in which the trial court must find that the parent is unfit and that termination is in the children's best interest, considering the likelihood of adoption and the potential for harm if the children are returned to their parent's custody. *Baker v. Arkansas Dep't of Human Servs.*, 2011 Ark. App. 400, 2011 WL 2140380. Our appellate courts will reverse a trial court's findings only if they are clearly erroneous, *i.e.*, if the appellate courts are left with a definite and firm conviction that a mistake has been made. *Benedict v. Arkansas Dep't of Human Servs.*, 96 Ark.App. 395, 242 S.W.3d 305 (2006).

Here, the trial court found that these children had been determined to be dependent-neglected, had been out of the home for over twelve months (24 months), and despite meaningful efforts by DHS, Heather had not remedied issues (medical neglect and inadequate supervision) that had caused the removal of the children. In addition, the trial court found that the children were all adoptable, that potential placements had already been located for some of them, and that there was the potential for harm to their health and safety if they were returned to Heather's custody, considering her lack of progress. Based upon our review of the record, we conclude that these findings by the trial court are not clearly erroneous and that

there is no basis for reversal of the trial court's decision to terminate under the circumstances presented in this case.

In addition to outlining the evidence supporting termination, counsel has also set out the nine adverse rulings and explained why none would support a reversal:

- Objection to method of service of petition to terminate, *i.e.*, it was sent to her counsel rather than to her personally. Counsel explains that the appellant was served personally when the case began and that the reasons set forth in Arkansas Code Annotated section 9–27–341 for personal service were not proved in this case. Moreover, Heather's counsel was served, and she was able to prepare for and attend the hearing, so no prejudice could be established.
- Two objections to Dena Heflin's testimony. Heflin is J.S.'s foster mother, and the objections were based on hearsay and an asserted lack of qualifications to testify about J.S.'s diagnosis and care following his third heart surgery. These objections were not ruled on and therefore were not preserved. Moreover, even if they had been properly preserved, these objections would not provide a basis for reversal.
- Objection to Marquita Keen's testimony (former foster mother of J.D.) as not presenting anything new since the last hearing. As explained by counsel, the "trial court correctly ruled that all information in the case could be brought up during the termination hearing."
- Objection to attorney ad litem's line of questions concerning Marquita Keen's contacting the attorney ad litem because Heather's family showed up for a visitation, and it was Keen's understanding that only contact with Heather was permitted. As noted by

counsel, no basis for the objection was provided by counsel at trial. Further, there was nothing critical in the testimony that would have served as the basis for termination. It just established that J.D., B.M., and C.M. were removed from Keen's house.

- Objection to attorney ad litem leading the witness (Keen). Counsel notes that the trial court correctly overruled the objection because leading is permissible on cross-examination. She also notes that the testimony involved the children's "bad" behavior, and other witnesses testified about that in addition to Keen.

- Three objections based on hearsay to the introduction of Heather's boyfriend's psychological evaluation. Counsel notes that DHS responded to the objection by contending that the document was not being offered to prove the truth of the matter asserted. The trial court allowed the document as being a type of document regularly used in the course of business by Melissa Dancer, DHS caseworker and the witness through whom the |₉document was introduced, and thus falling under the business-records exception to the hearsay rule. Counsel notes that even if these rulings were incorrect, the document was not pivotal in swaying the trial court's decision to terminate.

Based upon our review of the record, we hold that none of these objections could provide a meritorious issue on appeal. Accordingly, we grant counsel's motion to withdraw and affirm the termination of Heather's parental rights.

Affirmed; motion to withdraw granted.

WOOD and BROWN, JJ., agree.