

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-1065

| | |
|---|---|
| JENNIFER HAMMAN and EDGAR HAMMAN<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** May 7, 2014<br><br>APPEAL FROM THE YELL COUNTY CIRCUIT COURT<br>[NO.75SJV-12-12]<br><br>HONORABLE TERRY M. SULLIVAN, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellants Jennifer and Edgar Hamman appeal from the circuit court's termination of their parental rights to S.H., born October 20, 2010; F.H., born January 13, 2010; and K.S. born October 14, 2004.[1] Appellants' sole point on appeal is that there was insufficient evidence to support termination of their parental rights. We affirm.

Officer Tommy Broadstock, with the Danville Police Department, reported that F.H. had been "walking the streets of Danville with a sagging diaper on that appeared not to have been changed in sometime [sic]" and that he found Jennifer at home asleep when he returned F.H. to the residence. Four other children were in the home. The officer arrested Jennifer for child endangerment and took her to jail. On May 27, 2013, a seventy-two-hour hold was taken on all five children, F.H., S.H., K.S., A.S., born April

---

[1]Anthony Martin, father of K.S., did not appear below. His parental rights were also terminated, but Martin is not a party to this case.

SLIP OPINION

7, 2001, and R.S., born August 1, 2007.[2] Appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on May 30, 2012.

An ex parte order for emergency custody was filed on May 30, 2012. In that order, the court noted that DHS had been involved with the family since March 20, 2012, and that homemaker services had been provided, but those services did not prevent removal because Jennifer had been incarcerated for endangering the welfare of a minor.

In an adjudication and disposition order filed July 20, 2012, the children were adjudicated dependent-neglected "due to mother's drug use and inability to properly parent the children and keep them safe." The goal of the case was set as reunification.

A review order was filed October 15, 2012.[3] The court noted "Mother has complied with few of the court orders and the case plan." The court specifically cited Jennifer's current incarceration on manslaughter charges, and stated that she had "made little progress" towards alleviating or mitigating the causes of the juveniles' removal from the home and completing the court orders and requirements of the case plan. However, the court did note that she had completed parenting classes and a psychological evaluation.[4] The court also noted that Edgar had "complied with some of the court orders

---

[2]In a review hearing held immediately prior to the termination hearing, permanent custody of Jennifer's other two children, A.S. and R.S., was awarded to their respective fathers, Jerry Pierce and Michael Franey. The conclusion of the case below as to A.S. and R.S. is not a part of this appeal.

[3]An amended review order was filed on October 15, 2012.

[4]Jennifer testified that both she and Edgar were one class away from completing parenting classes, but never completed them because she became incarcerated.

and the case plan[,]" specifically noting that he had made "some progress" towards alleviating or mitigating the causes of the juveniles' removal from the home and completing the court orders and requirements of the case plan; he had completed parenting class and was attending visitation with the children. The goal of the case remained reunification.

Following a January 25, 2013 review hearing at which Edgar did not appear, a review order was entered on March 11, 2013.[5] The goal of the case remained reunification. A permanency-planning order was filed June 24, 2013, following a permanency-planning hearing held on May 24, 2013. Therein, the court found that appellants had not cooperated with DHS and changed the goal of the case to adoption; the court authorized DHS to seek termination of parental rights.

DHS filed a petition to terminate appellants' parental rights to S.H., F.H., and K.S. on July 9, 2013. DHS alleged the following grounds for termination under Arkansas Code Annotated § 9-27-341:

1. That a juvenile had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the parents for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parents;[6]

2. The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material

---

[5]An amended review order was entered on June 7, 2013.

[6]Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2013).



support in accordance with the parent's means or to maintain meaningful contact with the juvenile;[7] and

3. The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents.[8]

At the time of the August 16, 2013 termination hearing, both Jennifer and Edgar were incarcerated, though they did appear at the hearing.[9] DHS's court report, which was entered into evidence, noted that:

1. The department's prior involvement with the family was in an open case due to inadequate clothing;

2. Edgar had been listed as "homeless" in SNAP records at the last hearing;

3. Jennifer was currently incarcerated "due to pleading TRUE" to criminal charges in Yell County;

4. Edgar had had no contact with DHS since prior to the last hearing;

5. Jennifer had been incarcerated since the last hearing; and

6. There had been no parental visitation between the children and either parent since the last hearing.

---

[7]Ark. Code Ann. § 9-27-341(b)(3)(B)(ii)(*a*) (Supp. 2013).

[8]Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(*a*) (Supp. 2013).

[9]Jennifer was facing ten years' imprisonment with four years' suspended imposition of sentence. She was also sentenced to twelve months each, to run concurrently, on three additional counts of battery in the third degree.



A CASA report noted, in pertinent part, its concerns on the Arkansas State Police Crimes Against Children Division's true finding against Edgar for sexual abuse of A.S., which required him to register as a sex offender.[10]

On September 6, 2013, the circuit court filed an order terminating appellants' parental rights based on all three grounds cited in DHS's petition, specifically finding that:

1. "the Court ha[d] seen no effort from the parents to participate in the case plan and correct the conditions which led [to] the juveniles coming into care that despite being given another opportunity to do so, the parents have failed to maintain significant contacts with the juveniles throughout the case [. . . and] the parents ha[d] failed to provide any significant material support to the juvenile[s]";

2. Jennifer had "been incarcerated all but two or three months of the course of this case, and is currently incarcerated, facing a 10-year sentence with four years suspended"; and

3. Edgar was "released from the penitentiary just a few days after the removal was made" and "[t]here is a very good chance he will be going back to the Arkansas Department of [Correction]."

In its order, the court allowed appellants one final visit and granted DHS authority to consent to adoption.[11] This timely appeal followed.

---

[10]The CASA report erroneously stated that the victim of Edgar's sexual abuse was R.S.; the victim was A.S.

[11]The court noted that maternal grandmother, Thelma Louise Whisenhunt, had become involved with the case "at the last minute" and found her to be an inappropriate placement at the time, though it specifically stated that it was not ruling her out as a possible future placement.



## I.  *Standard of Review*

In cases involving the termination of parental rights, there is a heavy burden placed on the party seeking to terminate the relationship.[12] This is because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents.[13] Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child.[14] Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children.[15]

In accordance with Arkansas Code Annotated section 9-27-341(b)(3), an order terminating parental rights must be based upon clear and convincing evidence, i.e., proof that will produce in the fact-finder a firm conviction as to the verity of the allegation sought to be established.[16] On appeal, the issue before us is whether the trial court's finding that the fact was proved by clear and convincing evidence is clearly erroneous.[17] A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a

---

[12]*Morrison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 479, at 7, ___ S.W.3d ___, __ (citing *Blackerby v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 858, at 4, 373 S.W.3d 375, 378 (citing *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005))).

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Austin v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 406, ___ S.W.3d ___, __ (citing *McDaniel v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263).

[17]*Id.*



definite and firm conviction that a mistake has been made.[18] In deciding whether a trial court's finding is clearly erroneous, we give great deference to its superior opportunity to observe the parties and to judge the credibility of witnesses.[19]

## II.    *Best Interests*

Both appellants argue that the circuit court erred in finding that termination of their parental rights was in the children's best interest. We agree with DHS and the attorney ad litem that the circuit court's order terminating parental rights was not clearly erroneous.

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent.[20] However, this court has held that adoptability is but one factor that is considered when making a best-interest determination.[21] Furthermore, our appellate courts have noted that, in considering the best interest of the child, there is no requirement that every factor considered be

---

[18]*Id.*

[19]*Id.*

[20]*Madison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 368, at 6, ___ S.W.3d ___, __ (citing Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2011)).

[21]*Renfro v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 419, at 6, 385 S.W.3d 285, 288 (citing *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005)).



established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child.[22]

### a. Adoptability

Appellants argue that DHS did not meet its burden of providing clear and convincing evidence that any of the children were adoptable. They specifically argue that there was no testimony the adoption specialist, Laronda Garrison, that the children were adoptable based on race or age, contrary to the court's findings in its order, and that more information is required. Appellants are correct that no testimony was submitted regarding the effect of the children's age or race on their adoptability; however, other sufficient evidence was provided.

Though not explicitly stated in the order, from the bench at the termination hearing, the court stated, "I find by clear and convincing evidence that these children are adoptable, especially the younger children and that it's possible, it will be more difficult, but it's possible that K.S. could be adopted." This finding was no doubt based on the testimony of Garrison, who essentially stated the same thing, noting the younger children are "very adoptable" and that K.S. is also adoptable "once he can get stabilized." She testified to her belief that "continued counseling could help K.S. get to that point [of

---

[22]*Id.*, 2011 Ark. App. at 9, 385 S.W.3d at 280 (citing *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918; *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005)).


being stabilized].”[23] She stated that there were potential adoptive homes for S.H. and F.H., but not for K.S. because “K.S. is not ready for that at this time.” The trial court “must simply consider the likelihood that the children will be adopted—that factor need not, however, be established by clear and convincing evidence.”[24] However, a caseworker’s testimony that children are adoptable is sufficient to support an adoptability finding.[25] We find that this factor was sufficiently considered and Garrison’s testimony was sufficient to support the court’s finding of adoptability.

### b. Potential Harm

Appellants argue that there was not sufficient evidence to show clearly and convincingly that the children would be subjected to potential harm if returned to either appellant’s care. They argue that termination of their parental rights was, in large part, due to their incarceration and was not in the children’s best interests. This is clear, they argue, from (1) Jennifer’s testimony that she would be released within seven months of the termination hearing; (2) Edgar’s testimony that he believed he would receive sixty days to six months for his probation violation, at the conclusion of which he would be able to care for his children; and (3) Thelma Louise Whisenhunt’s testimony that she wanted custody of all the children. These statements ignore the totality of the testimony.

---

[23]Garrison was the removal caseworker in this matter and continued to be the caseworker until she moved to the adoption department in October 2012.

[24]*Renfro*, *supra*, 2011 Ark. App. at 6, 385 S.W.3d at 288 (quoting *Dority v. Ark. Dep’t of Human Servs.*, 2011 Ark. App. 295, at 6).

[25]*Madison*, *supra*, 2013 Ark. App. 368, at 6, ___ S.W.3d ___, __ (citing *Cobbs v. Ark. Dep’t of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004)).



Jennifer did testify that she would be released in seven months; however, she submitted no proof of that asserted time period, and the ADC website reflected a release date of April 8, 2015, one year and almost nine months out from the date of the termination hearing. Additionally, although she testified that she felt she was complying with the case plan in the beginning, she admitted that she had not been out of jail very long, only two months; admitted that she and Edgar failed to complete parenting classes; agreed that having an incarcerated mother and a family that moved from place to place was not stable; and acknowledged that two or three years was a long time to her children who are "pretty young."[26]

Edgar did testify to his belief that he would receive sixty days to six months for his probation violation, but he admitted that he did not know what the outcome was going to be as the hearing was not until the Monday after the termination hearing. He testified that he had a "job and house and everything lined up as soon as I walk out" of prison, but he submitted no proof of the same and also testified that he had lived in "three or four places" since his release from prison shortly after the children's removal. He admitted that "the situation Jennifer is in and the situation I'm in does not promote stability."

Whisenhunt did testify that she could provide a home for the children; however, she had never attended a hearing, which she explained away with the statement "I would have got up and come if I knew it." Additionally, according to Jennifer's testimony, she

---

[26]Also, despite the true finding of suspected child maltreatment based on sexual conduct, contact and sexual penetration by Edgar against Jennifer's daughter, A.S., Jennifer stated "At this time, I don't know if Mr. Hamman and I will get back together once I'm released." This leaves in question her decision-making ability as well as her ability to protect her children, specifically F.H., who is female.

had only "put in to get these kids over three months ago" at which point the children would have already had been in DHS's custody approximately one year.[27] Her willingness to essentially wait until the last minute to attempt to gain custody of the children belies her testimony that "[t]here's very much a bond between myself and those kids."

A trial court is only required to consider potential harm to a child's health and safety that might come from continued contact with the parents; there is no requirement to find that actual harm would result or identify the potential harm.[28] The potential-harm analysis is to be conducted in broad terms.[29] Looking at the testimony overall, the potential harm to the children if parental rights were not terminated is clear: the children would remain in DHS's custody for an undetermined amount of time waiting for both of their parents to be released from incarceration and to satisfactorily complete the case plan. These children, who had already been in DHS's custody for approximately fifteen months, would be required to linger in limbo until appellants were released from jail and got their acts together. This kind of wait-and-see is the definition of the instability that the termination statute is intended to protect children from.[30] Furthermore, Whisenhunt,

---

[27]Lawrence testified that Whisenhunt's initial inquiries were for custody of only A.S.

[28]*Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 11, 379 S.W.3d 703, 709 (citing *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722).

[29]*Id.*

[30]*Hoffman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 856, at 5, 380 S.W.3d 454, 457 (citing Ark. Code Ann. § 9-27-341(a)(3) (Repl. 2009) (The intent of our termination statute is to provide permanency in a child's life in all instances in which returning the child to the family home is contrary to the child's health, safety, or welfare,

having only attempted to obtain custody of the children shortly before the termination hearing, had not been properly investigated and therefore was not a viable option. Accordingly, based on the potential harm to the children, we cannot say that the trial court clearly erred in finding that termination was in the children's best interest.

### III.    *Statutory Grounds*

On appeal, appellants argue that there was insufficient evidence to support termination of their parental rights under any of the grounds cited in DHS's petition. They argue that the following findings of the court were clearly erroneous: (1) that DHS made meaningful efforts; (2) that appellants failed to remedy the circumstances that caused the children's removal; (3) that the appellants failed to maintain meaningful contact, arguing specifically that Jennifer's incarceration prevented meaningful contact and Edgar's homelessness should not be held against him; and (4) that none of the children had been adjudicated dependent-neglected under life-endangering circumstances.

In addition to the best-interest finding, the court must also find by clear and convincing evidence that one or more statutory grounds for termination exists.[31] However, proof of only one statutory ground is sufficient to terminate parental rights.[32] Because we find that at least one statutory ground was proven, we do not agree with

---

and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective)).

[31]*Drake v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 274, at 11, ___ S.W.3d ___, __ (citing Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2011)).

[32]*Id.* (citing *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, ___ S.W.3d ___).



appellants' argument that there was insufficient evidence to support any of the grounds cited by DHS in its petition.

a. Meaningful Efforts

The circuit court found DHS had proven by clear and convincing evidence that the children had been adjudicated by the court to be dependent-neglected[33] and had continued to be out of the custody of the parents for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parents. Appellants do not dispute that the children were found to be dependent-neglected or that they were out of the home for at least twelve months, but they dispute that DHS made a meaningful effort to either provide them with services that would remedy the issues causing the children's removal, or that appellants failed to remedy those issues despite a lack of meaningful services.

The court found that DHS had made reasonable efforts in its October 15, 2012 review order; its March 11, 2013 review order; and its June 24, 2013 permanency-planning order. Appellants did not appeal any of those findings. Because appellants failed to challenge any of the reasonable-efforts findings below, they have waived the issue for purposes of appeal.[34]

---

[33]The parties stipulated to the children's being dependent-neglected.

[34]*Cheney v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 209, at 11, 396 S.W.3d 272, 279 (citing *Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 526, 385 S.W.3d 373).

SLIP OPINION

Even if the argument was preserved, it would still fail. Appellants do not cite any specific services that DHS should have or even could have provided for them while they were incarcerated. At the termination hearing, they did not request that they be given more services; Jennifer only requested that the children be placed with her mother and Edgar requested only that the circuit court give him more time. Our court has frequently recognized that a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances.[35] Additionally, appellants argue that Jennifer had obtained "beneficial services" to help with her rehabilitation during this case while incarcerated. While this is duly noted, appellants ignore the fact that even if proof of the same had been submitted, and it was not, the court did not know when these services were obtained, when or if they were completed, and more importantly, had no indication at the termination hearing of whether those services made her a viable placement option for the children, or made it so she would become so within a reasonable amount of time, upon release. Their argument is without merit.

Because DHS is required to prove only one statutory ground for termination, it is not necessary for us to consider appellants' remaining arguments regarding the other two statutory grounds.[36]

> We affirm the circuit court's termination of appellants' parental rights.
> Affirmed.

---

[35]*Hoffman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 856, at 5, 380 S.W.3d 454, 457 (citing *Johnson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 763; *Henderson v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 191, 377 S.W.3d 362; *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849).

[36]*Wittig v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 502, at 11, ___ S.W.3d ___ (citing Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2011)).



WALMSLEY and WOOD, JJ., agree.

*Melissa Dorn Bratton*, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.