SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-1112

| | |
|---|---|
| | Opinion Delivered APRIL 19, 2017 |
| OSCAR ROMERO | |
| APPELLANT | APPEAL FROM THE YELL COUNTY CIRCUIT COURT, NORTHERN DISTRICT |
| V. | [NO. 75NJV-15-23] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED |

### N. MARK KLAPPENBACH, Judge

This is an appeal from the order entered on October 4, 2016, by the Yell County Circuit Court terminating the parental rights of appellant Oscar Romero to his son VR, who was born in April 2015. Appellant does not contest the sufficiency of the evidence regarding statutory grounds to support terminating his parental rights. Appellant's argument on appeal is that the trial court clearly erred in concluding that termination of his parental rights was in VR's best interest. We affirm.

The termination of parental rights involves a two-step process in which the trial court must find that the parent is unfit and that termination is in the child's best interest. *Murray v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 431, at 6, 429 S.W.3d 288, 292. An order terminating parental rights must be based on clear and convincing evidence, i.e., proof that will produce in the fact finder a firm conviction as to the verity of the allegation sought to be established. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. On

SLIP OPINION

appeal, the issue before us is whether the trial court's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that a mistake has been made. *Id.* In deciding whether a trial court's finding is clearly erroneous, we give great deference to its superior opportunity to observe the parties and to judge the credibility of witnesses. *Id.*

In determining the best interest of the juvenile, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. Adoptability is but one factor that is considered when making a best-interest determination. *Hammam*, *supra*. In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. In considering the best interest of the child, there is no requirement that every factor considered be established by clear and convincing evidence; rather, after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of

the child. *Id*.

In this case, appellant had been incarcerated for the entirety of VR's life at the time of termination. Appellant contends on appeal that he needed a minimal amount of additional time in which to be released from prison and in which to demonstrate his stability as a parent. Appellant adds that his mother was a fit and willing relative available to care for VR until he could take custody of his son. Thus, he argues that the trial court's decision on "best interest" was not supported by clear and convincing evidence and must be reversed.[1] The Department of Human Services (DHS) and the child's attorney ad litem argue that the trial court did not clearly err.

In order to assess appellant's arguments, we examine the chronology of events and the evidence presented to the trial court. DHS removed VR from his mother's custody shortly after his birth on April 29, 2015, due to the mother's use of methamphetamine and THC while she was pregnant. Appellant, a young man in his early twenties, was incarcerated at that time and had a multiple-felony record. In May 2015, the trial court found there to be probable cause to support removal of VR from his mother's custody; she stipulated to the existence of probable cause.

In July 2015, VR was adjudicated to be a dependent-neglected child; the mother

---

[1]Appellant does not contest the trial court's consideration of the likelihood that VR would be adopted; consequently, we do not address that factor. Appellant's argument relates to the trial court's consideration of potential harm in returning VR to appellant's custody and the overall finding of VR's best interest.

SLIP OPINION

stipulated to this finding. A case plan was developed for the mother, focused primarily on addressing her drug-addiction issues, but she failed to remedy those issues and was convicted of criminal offenses while this DHS case was pending.[2] In the July 2015 adjudication order, it was noted that appellant testified that he had a tentative prison discharge date of November 2015.

The matter was reviewed in October 2015, at which time appellant was deemed noncompliant with the case plan due to his incarceration and unavailability for services. Another review hearing was conducted in January 2016, followed by a permanency-planning hearing in April 2016, at which time appellant was appointed an attorney. At that hearing, appellant was noted to have been imprisoned for the entirety of VR's life and to be presently ineligible for parole due to disciplinary violations. Appellant testified at that hearing to his belief that the earliest possibility for his parole would be in August 2016. Appellant said that he was taking as many classes in prison as he could in order to try to obtain parole. In the permanency-planning order, DHS was given permission to perform a home study on appellant's mother, and the goal of the case was changed to termination of parental rights and adoption.

In July 2016, DHS filed a petition to terminate parental rights in which DHS alleged that appellant had a substantial criminal history including theft, breaking or entering, robbery,

---

[2]Her parental rights were terminated in these proceedings, but she is not a party to this appeal.

SLIP OPINION

and burglary; that VR was approximately fifteen months old and appellant had been incarcerated all of VR's life; that appellant's total current sentence would not be completed until VR was seven years old; and that this constituted a substantial period of VR's life. DHS further alleged that, with appellant's repetitive criminal history, there was little likelihood that additional time or services would result in successful reunification. DHS also alleged that termination of parental rights was in this child's best interest.

The termination hearing was conducted in August 2016. Appellant, then age twenty-two, testified that he had never seen his son in person due to his incarceration. He testified that he had once been denied parole but that he had taken parenting and anger–management classes while in prison. Appellant stated that it would not be "too long" after he was paroled that he could become ready to care for his son. He thought he could be paroled in September 2016 and said that he had two potential jobs (as a painter and as a construction worker) lined up as well as a place to live with his godmother. Appellant wanted his mother to care for VR until he was ready to parent independently.

Appellant's mother is not a legal United States resident, although she has lived in this country for over twenty years. A CASA (Court Appointed Special Advocates) report was entered into evidence; a home study on appellant's mother was attached. The CASA recommendation was that termination of parental rights take place and that VR be cleared for adoption.

The DHS caseworker testified that VR was presently in a placement that would

SLIP OPINION

consider adopting him; that VR had no impediments to being adopted; and that she was confident that an adoptive home could be readily found for this child. The caseworker expressed concern that appellant had already been denied parole once, he had prison infractions in recent months, and he still had "several years hanging over his head." The caseworker was also concerned that appellant would not change and would instead continue with his criminal behaviors. She was asked about the potential placement of VR with his paternal grandmother. The caseworker testified that the grandmother and her long-term live-in boyfriend were "illegal" and that both of them remained married to other people. The caseworker stated that the grandmother's situation had inherent instability as opposed to permanency provided by adoption. The caseworker noted, though, that there was nothing prohibiting appellant's mother from being considered as an adoptive placement. The positions of the attorney ad litem, CASA, and DHS were uniform that VR's best interest was served by terminating parental rights.

At the conclusion of the hearing, the trial judge announced his decision to terminate parental rights in this "sad case." The trial judge recounted that appellant had never seen his son due to his incarceration; that appellant had a repetitive criminal history with uncertainty regarding his potential upcoming parole; that appellant completed some classes and appeared to love his son; but that neither parent could have VR placed with them. The trial judge stated that appellant's mother seemed "to be a very nice lady" but that there were legitimate concerns as outlined by the caseworker. A formal order was entered in October 2016 to

SLIP OPINION

reflect the required statutory findings as established by clear and convincing evidence. This appeal followed.

Appellant argues to us that the trial court clearly erred, framing the issue as the trial court having acted "unreasonably in refusing to afford [appellant] additional time in which to demonstrate stability as a parent," when appellant "had an appropriate relative....who was willing and able to care for [VR.]" We are not firmly convinced that the trial court made a mistake in finding termination to be in VR's best interest.

The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3 (Repl. 2015)). This need for permanency overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *Villaros v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 399, 500 S.W.3d 763; *McElwee v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 214, 489 S.W.3d 704. A parent's past behavior is often a good indicator of future behavior. *Villaros*, *supra*.

The trial court recited appellant's repetitive criminal behavior, the indefinite nature of his future parole, and the testimony that gave reasons to question the viability of the paternal grandmother's home as an appropriate temporary placement for VR. This court is not to act

as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court; we reverse only in those cases in which a definite mistake has occurred. *Harris v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 508, 470 S.W.3d 316. In this case, we are not left with a definite and firm conviction that a mistake was made.

Affirmed.

WHITEAKER and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.