# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-13-291

| | |
|---|---|
| KIM CLEMENTS | **OPINION DELIVERED** SEPTEMBER 18, 2013 |
| APPELLANT | |
| | APPEAL FROM THE WASHINGTON |
| V. | COUNTY CIRCUIT COURT |
| | [NO. JV-2011-551] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE STACEY |
| HUMAN SERVICES and MINOR | ZIMMERMAN, JUDGE |
| CHILD | |
| APPELLEES | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Kim Clements, father of C.C. (dob 6/27/11), appeals the termination of

his parental rights by the Washington County Circuit Court, arguing that the decision to

terminate was erroneous because it was (1) based on grounds not pled in the termination

petition; (2) not supported by sufficient evidence of the ground pled in the petition; and (3)

based on facts from prior hearings. We affirm.

## I. *Facts*

This case began with a Department of Human Services (DHS) petition for emergency

custody and dependency-neglect filed August 26, 2011, on behalf of two children, C.C. and

Z.G.[1] (dob 9/08/08). The petition claimed that a hotline report was received on August 22,

---

[1]Appellant is not the father of Z.G.; thus, Z.G. is not at issue in this case, and neither
Jessica Gordy-Burton nor Aaron Morris, Z.G.'s putative father, filed an appeal of the
termination of their parental rights.

2011, alleging that Jessica Gordy-Burton, mother of both children, had taken C.C. to Northwest Medical Center complaining that C.C. had stopped breathing. After running tests and finding nothing wrong, hospital staff became concerned with the mother's behavior, which included slurred speech, inappropriate responses, and inconsistent stories. DHS met with the mother and appellant on August 23, 2011, and both tested positive for methamphetamine and THC. Appellant admitted having been convicted of manufacturing methamphetamine, but both parents claimed that their recent use of Sudafed explained their positive drug-test results.

An ex parte order for emergency custody was filed August 26, 2011, and the children were placed in DHS custody. A probable-cause hearing was held on August 31, 2011, and the mother and appellant were given supervised visitation conditioned on passing three drug screens. Both parents were ordered to cooperate with DHS; keep DHS informed of address and telephone number changes; refrain from using illegal drugs and alcohol; have a drug-and-alcohol assessment and follow the recommendations; submit to random drug screens on a weekly basis; complete parenting classes; obtain and maintain stable housing and employment; maintain a clean and safe home for the children; and demonstrate an ability to protect the children from harm.

An adjudication and disposition order was filed September 22, 2011, reflecting that appellant was served with notice of the hearing, but did not appear. The circuit court found that it would be contrary to the children's best interest for custody to be returned to the parents and ordered the same requirements to be met, along with an order that appellant

2

participate in individual counseling and attend AA/NA meetings at least once a week. Appellant was also ordered to pay child support of forty dollars per week, and paternity of C.C. was established. The goal of reunification was set.

A review order filed December 8, 2011, reflects that appellant had partially complied with the case plan in that he had maintained stable housing and employment, had attended counseling and visitations, and completed his drug-and-alcohol assessment, but that he had not paid his child support. Because he had two "abnormal" drug screens, he was ordered to submit to a hair-follicle test by Friday, December 16, 2011. The circuit court noted that appellant was ordered to follow the terms of his parole and that the child-support order was discontinued. Reunification remained the goal, and a review hearing was set for February 29, 2012.

A review order was filed on March 1, 2012, reflecting that appellant's December 2011 hair-follicle test was positive for methamphetamine and that the parents had not visited with the children since December 2011 because of their drug use and noncompliance. The circuit court noted that appellant was hostile, not cooperative, and angry that he had to take a drug screen. Further, the court noted that appellant was in total denial of his drug addiction, even though he continued to use methamphetamine and was on parole for felony-methamphetamine charges. The goal for the case remained reunification and the orders were continued. A permanency-planning and show-cause hearing was set for May 10, 2012.

Neither parent appeared for the May 10 hearing, and the circuit court established a goal of adoption, finding that appellant had not participated in drug treatment, not submitted

3

to random drug screens, not participated in NA, not maintained stable housing, had unknown employment, and had not cooperated with DHS. The June 4, 2012 order reflects that the circuit court issued a bench warrant for the parents' failure to appear, and sentenced both to ninety days in jail.

A petition for termination of parental rights was filed on September 5, 2012, and a hearing was held on December 14, 2012. At the hearing, Angela Wood, caseworker for DHS, testified that she had been assigned to the case since August 2011. She explained that the children were adjudicated dependent-neglected due to the parents' methamphetamine use, and the parents had been court-ordered not to contact the children for almost a year. She said that neither parent had participated in any reunification services in that they had not maintained stable housing, not updated their address or telephone numbers, not cooperated with DHS, not participated with the case plan or weekly drug screens, not obtained individual counseling, and had not received any substance-abuse treatment. She said that appellant did not follow up with the recommendations of his drug-and-alcohol assessment and did not go to weekly support meetings. Appellant did not keep DHS notified of his employment and did not participate in parenting courses. She verified that appellant tested positive for methamphetamine in December 2011.

Ms. Wood said that the parents were released from jail on August 9, 2012, and reported directly to DHS, participated in a drug screen, and told her that they were living with friends. She claimed that they called her sporadically thereafter, and that she became concerned when they did not contact her in October 2012. She said that she did not know

4

where they were living or whether they were participating in services during that time. She said that they were not participating in drugs screens, so they "started to drop off again." She admitted that she erred in documenting appellant's telephone number and called a wrong number for ten weeks. However, she claimed that the parents did not call her during that time.

On cross-examination, Ms. Wood admitted that her voice mail had become full several times during this case. She testified that the children were highly adoptable and had been out of the parents' custody since August 23, 2011, which was one year and four months. She recommended adoption and termination of all parental rights.

Appellant testified that he recalled getting a drug-and-alcohol assessment, but could not remember the recommendations. He said that he gave "the papers" to his wife and she filed them, but he did not read them. He testified that he had been married for a year and that it had been less than a year since he used illegal drugs. He claimed that he was paying for individual counseling at Ozark Guidance and admitted that he had not taken any parenting classes, as he did not believe he was ordered to do so. He said that he had quit drinking alcohol fifteen years ago. He said he receives unemployment, but is actively seeking a job. He said he did not understand why his children were being taken away due to a dirty urine or follicle test. He said that he was on parole until 2022 for "simultaneous drugs and firearms," not for "cooking meth."

An order terminating parental rights was filed on January 14, 2013, and it reflects that the circuit court incorporated into the record all the pleadings and testimony in this case.

As to appellant, the circuit court found that he had not cooperated with DHS, had not complied with court orders, and had not followed the recommendations of his drug-and-alcohol assessment. The circuit court noted that the parents had not visited the children due to their failure to pass three drug screens. The circuit court found that the parents had not been able to demonstrate that they had stable housing and that none of the parents had been able to remedy the subsequent factors that had arisen. From this order, appellant filed a timely notice of appeal, and this appeal followed.

## II. *Applicable Law*

Termination-of-parental-rights cases are reviewed de novo. *Madison v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 368, 428 S.W.3d 555. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Hughes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 526. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental

rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007).

In order to terminate parental rights, a trial court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2011). Additionally, the trial court must find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B). The statutory grounds include:

> (i)(a) That a juvenile has been adjudicated by the court to be dependent–neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
> . . .
> (ii)(a) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.
> . . .
> (vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27–341(b)(3)(B)(i)(*a*), (ii)(*a*), and (vii)(*a*).

III. *Errors in Petition and Order*

Appellant first argues that the circuit court erred in terminating his parental rights because the only bases for termination in the circuit court's order were two grounds that were not alleged against him. First, he argues that the petition alleged only that Z.G. had been adjudicated dependent-neglected and lived outside of the home for twelve months, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), and that other factors arose subsequent to the filing of the original petition that demonstrate that return of the children would be contrary to their health, safety, or welfare, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*). Following the "other factors" allegation, the petition alleged specifically that appellant had failed to comply with the case plan and had tested positive for methamphetamine on a hair-follicle test in December 2011, which resulted in him not having visitation with C.C. since that time.

Appellant contends that, because DHS failed to list C.C. in the paragraph reciting the dependent-neglected finding under subsection 341(b)(3)(B)(i)(*a*), the only allegation directed toward him was the "other factors" allegation. Appellant asserts that, in the termination order, the circuit court's form indicating the "other factors" ground under subsection 341(b)(3)(B)(vii)(*a*), was not checked. He argues that the circuit court only checked the grounds listed under subsection 341(b)(3)(B)(i)(*a*)—adjudicated dependent-neglected and lived outside home for twelve months, which was not inclusive of C.C. in the petition—and subsection 341(b)(3)(B)(ii)(*a*)—failure to support and maintain contact, which was not included in the petition at all.

Appellant cites *K.C. v. Arkansas Department of Human Services*, 2010 Ark. App. 353, 374 S.W.3d 884, for the proposition that a party has a due-process right to be informed of the allegations against him, and parental rights may not be terminated on a provision that is not pled. Appellant argues that Arkansas Rule of Civil Procedure 15(b) (2012), which allows amendment of pleadings to conform to the evidence presented at trial, cannot be used to salvage the circuit court's ruling because there was no indication at the trial that these new issues were being raised or considered.

We disagree with appellant. Even though the trial court failed to check the blank for "other factors" on its form order terminating appellant's parental rights, the circuit court did circle "parents" within that section and indicated by hand-written remarks that DHS had offered appropriate family services applicable to both parents, including drug-and-alcohol assessments, random drug screens, and referrals for housing and employment. Underneath the hand-written remarks, the trial court circled "mother," "father," "parents," "has," and "incapacity" and "indifference" within the sentence indicating the parents' failure to remedy subsequent factors despite the services offered to them. It is clear that the circuit court relied on this ground in terminating appellant's parental rights and that this ground was alleged in the petition.

## VI. *Insufficient Evidence*

Appellant also claims that, because the circuit court failed to check the section addressing the "other factors" grounds—even though the word "parents" is circled and the circuit court wrote comments—the circuit court did not make this finding. Alternatively,

9

appellant argues that if the circuit court did find "other factors" supporting termination, there was insufficient evidence to prove the ground. He contends that, as applied to him because he was not the cause of removal, "other factors" requires different evidence of something that occurred after the initial petition. He claims that the provision is intended to address new circumstances or issues that come to light as the case progresses, not the ones that caused the case to be opened initially. He cites *Porter v. Arkansas Department of Human Services*, 2010 Ark. App. 680, 378 S.W.3d 246, where this court held that termination was proper because the circuit court's decision was based on evidence of other factors that came to light subsequent to the petition being filed. Appellant argues that there was no evidence of other factors that arose subsequent to his situation at the time C.C. was removed. He argues that he did not have a job or home when the petition was filed and that those circumstances had not changed at the termination hearing; thus, these cannot be subsequent factors.

DHS and the attorney ad litem contend, and we agree, that the case law supports the circuit court's finding that appellant's failure to comply with the court orders and case plan were sufficient evidence of other factors arising subsequent to the filing of the original petition. *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, 384 S.W.3d 7; *Curran v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 301. Further, appellant's post-removal decision not to take advantage of services demonstrated his incapacity or indifference to rehabilitate his circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). Appellant's failure to comply with court orders constituted sufficient evidence under the statute.

10

V.  *Incorporating Testimony from Prior Hearings*

Finally, appellant argues that the circuit court erred by incorporating testimony from prior proceedings into its decision to terminate his parental rights.  Appellant asserts that, without a request by any party, the circuit court checked the form termination–of–parental–rights order next to the statement that

> [p]ursuant to Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)(d)(2), since the mother has been represented by an attorney since the probable cause/adjudication hearing, the Court must take judicial notice and incorporate by reference into the record all pleadings and testimony in the case incurred before the termination of parental rights hearing.

Appellant complains that, as there was no transcript of that prior testimony prepared or admitted, there is no way to know what the circuit court considered, how the court apprised itself of what that testimony was, or how the court weighed that prior testimony.  Further, the statute cited has been repealed by Act 587 of 2007, and Arkansas Supreme Court Rule 6-9 became effective.  This argument is mirrored and addressed in *Kelso v. Arkansas Department of Human Services*, 2013 Ark. App. 509.  We adopt the reasoning therein and affirm on this issue.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.