

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-231

| | |
|---|---|
| CRYSTAL BECK<br>APPELLANT | **Opinion Delivered** September 20, 2017 |
| V. | APPEAL FROM THE GARLAND<br>COUNTY CIRCUIT COURT<br>[NO. 26JV-15-398] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br>APPELLEES | HONORABLE TED C. CAPEHEART,<br>JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Crystal Beck appeals a Garland County Circuit Court order terminating her parental rights to her daughters, SB and OB. More specifically, she challenges both the trial court's findings of statutory grounds and its best-interest determination. We affirm.

I. *Facts and Procedural History*

On July 7, 2015, Beck took SB and OB to a child-advocacy center, reporting allegations of sexual abuse. The Arkansas Crimes Against Children Division (CACD) was contacted to conduct a criminal investigation, and the Arkansas Department of Human Services (Department or DHS) was contacted to perform a safety assessment. DHS had concerns about Beck's ability to care for and protect the children. She had driven the children to the center and was exhibiting bizarre and agitated behavior, causing DHS to suspect the influence of drugs. Beck tested positive for THC, opiates, benzodiazapines,

methamphetamine, and amphetamine. The family service worker also had concerns about the children's home environment. The children were then removed from her custody by the Department.

On September 9, 2015, the court adjudicated the children dependent-neglected. The court noted specifically that Beck had tested positive for several illegal substances and that she had driven a vehicle with the children while under the influence of those illegal substances, thereby placing them at a risk of harm. Thus, the court based its adjudication on both neglect and parental unfitness. The trial court set the goal of the case as reunification, ordered DHS to provide services to Beck, and directed Beck to comply with the orders of the court.

After adjudication, the court conducted two review hearings. At both hearings, the court found that DHS had made reasonable efforts to provide services necessary to achieve reunification. The court also found that Beck had only partially complied with the case plan and had made some progress in mitigating the causes of the out-of-home placement.[1] Specifically, the court noted that Beck was either unemployed or working only part-time, had been jailed twice since adjudication, and had not provided any proof of her place of residence to DHS. Regarding the children, the court suspended Beck's visitation on the recommendation of the children's therapist. Regarding sobriety, the court found that Beck had not remained clean and sober; that she had tested positive for methamphetamine, amphetamine, THC, and opiates; that she had missed drug/alcohol assessment appointments; and that she had not completed a drug-treatment program. Despite these findings adverse to

---

[1]At the second review hearing, the court found that Beck had made only minimal progress in alleviating the causes of out-of-home placement.

Beck, the trial court continued the goal of the case as reunification, with a concurrent plan of legal adoption/legal guardianship/permanent custody.

On June 29, 2016, the court conducted a permanency-planning hearing and changed the goal of the case to termination of parental rights and adoption. One month later, on July 29, 2016, DHS filed a petition to terminate Beck's parental rights, alleging the following grounds: twelve months' failure to remedy; subsequent other factors; and aggravated circumstances. The Department alleged that it was in the best interest of the children for Beck's parental rights to be terminated, citing homelessness, inadequate supervision, continued sexual abuse, and "all dangers associated with a parent abusing illegal substances."

The termination hearing was initially scheduled for October 5, 2016. Beck did not appear at the call of the docket. She had moved to the state of Utah and, due to difficulty with travel, was late for the hearing.[2] The termination hearing was finally held on December 16, 2016. The court heard from numerous witnesses, including Beck, regarding Beck's compliance with the case plan, the adoptability of the children, and the progress of the children in therapy and foster care. The court found the Department's witnesses to be credible in this regard. After the hearing, the court found by clear and convincing evidence that (1) the children had been out of Beck's custody for over 12 months, she had failed to follow and complete the case plan, and she had not remedied the circumstances that brought the children into the state's custody; (2) her failure to complete the case plan and remedy the conditions that brought the children into custody demonstrated her incapacity or indifference

---

[2]The case was rescheduled to October 20, 2016, but did not proceed that day due to a conflict with the court.



to remedy the circumstances preventing reunification; and (3) the Department had offered her numerous services to achieve reunification and that there was little likelihood that continued services would result in successful reunification and, as such, that Beck had subjected the children to aggravated circumstances. The court noted that Beck had moved to Utah after the permanency-planning hearing and that, since that hearing, she had attempted to make progress on the case plan. However, the court found that Beck's resumption of contact and her efforts to participate in the case plan or follow the orders of the court both after the permanency-planning hearing and before the termination-of-parental-rights hearing, were insufficient to prevent termination of her parental rights. The court found the Department had proved all three statutory grounds alleged in the petition and that it was in the best interest of the children to terminate Beck's parental rights. More specifically, the court stated it had considered the likelihood that the children would be adopted and the potential harm to the children if they were returned to Beck's custody. Beck appeals the order of termination.

## II. *Standard of Review*

The rights of natural parents are not to be passed over lightly. The termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. *Id*. However, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. 506, 471 S.W.3d 227.

SLIP OPINION

In order to terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground for termination exists and that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

Our standard of review in termination-of-parental-rights cases is well settled; we review these cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). We will not reverse the trial court's rulings unless its findings are clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the trial court to judge the credibility of witnesses. *Dinkins*, *supra*.

III. *Statutory Grounds*

Beck challenges all three statutory grounds for termination found by the trial court: the twelve-month-failure-to-remedy, the subsequent-other-factors, and the aggravated-circumstances grounds. However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918. Because there was sufficient evidence to support the twelve-month-failure-to-remedy ground, her challenge fails.

The failure-to-remedy ground found at section 9-27-341(b)(3)(B)(i)*(a)* allows for termination of parental rights if the child has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and

5

despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Here, it is undisputed that OB and SB were adjudicated dependent-neglected by the court and had remained out of Beck's custody for over twelve months. It is undisputed that the conditions that caused their removal were Beck's drug usage and her inability to properly supervise the children. It is also undisputed that the trial court made specific findings at every hearing that DHS had made reasonable efforts to provide services necessary to achieve reunification. Thus, the only issue for discussion is whether Beck remedied the conditions that caused removal.

Here, Beck did not remedy the conditions that caused removal. Admittedly, she did complete a 15-day outpatient-treatment program in May 2016. However, based on her drug-and-alcohol assessment completed in August 2016, it was recommended that she enter outpatient treatment for a minimum of 90 days while continuing with her individual therapy appointments. While there was some evidence that she attended AA/NA meetings after she had moved to Utah, there is no evidence that she has ever completed the recommended outpatient treatment. Overall, throughout the history of these proceedings, Beck repeatedly tested positive for controlled substances, continued to have issues with drugs up until at least the permanency-planning hearing in June 2016 when she tested positive for buprenorphine, attempted to manipulate the outcome of several of her drug screens, and failed to show for others. The trial court heard all this evidence and was not convinced of her sobriety or that she had shown that she could maintain sobriety. We cannot say that its finding in this regard was clearly erroneous.

Beck argues that she had shown recent progress and that the trial court erred in not giving this due consideration. Her argument is misplaced. In termination proceedings, the trial court must consider a parent's compliance during the entire dependency-neglect case and the evidence presented at the termination hearing in deciding whether termination is in the child's best interest. Ark. Code Ann. § 9-27-341(a)(4)(B). Here, the trial court acknowledged that Beck had recently made some progress but found that her progress was too little, too late. Thus, the trial court clearly considered and weighed Beck's compliance throughout the entire case and did not reject her last-minute efforts out of hand.

IV. *Best Interest*

Beck next challenges the trial court's best-interest finding, arguing that there was insufficient evidence of a potential harm; she does not challenge the court's adoptability finding. However, we hold that the court's potential-harm analysis was not clearly erroneous. In considering whether there will be potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Reid, supra.* Potential harm must be viewed in broad terms, including the harm the child suffers from the lack of stability in a permanent home. *Martin v. State*, 2017 Ark. 115, 515 S.W.3d 599.. Moreover, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. Here, the court noted that Beck's failure to complete the case plan demonstrated how SB and OB would be at risk of harm if returned to her custody. There was also evidence that Beck is living with an 80-year-old man in exchange for caring for him and his house. She

met the man after she had moved to Utah and had been picked up by him while she was hitchhiking. They do not have a written lease agreement, and she could be kicked out at any time for any reason. He has not yet undergone a background check, and because a home study has not been completed, it is unclear whether his household would even meet with court approval for placement. Finally, the children are in counseling, and their former therapist has recommended no contact with Beck until more progress has been made in their treatment. As a result, Beck has had no contact with the children for almost a year, and there is no evidence as to when contact could resume without harm to the children's treatment. Based on the foregoing, the trial court's finding in this regard was not clearly erroneous.

Affirmed.

GRUBER, C.J., and BROWN, J., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth* and *Mary Goff*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.