PHILLIP T. WHITEAKER, Judge *918 Appellant Teshara Garlington's parental rights to her two children, B.B. and S.D., were terminated by order of the Faulkner County Circuit Court.[1] On appeal, she argues that the circuit court clearly erred in finding evidence to support the statutory grounds for termination.[2] We affirm.
I. Background
The Arkansas Department of Human Services (DHS) opened a protective-services case with Garlington in April 2015 based on a true finding of inadequate supervision. During the course of the protective-services case, Garlington had issues with her stability, relationships, and housing. In June 2015, Garlington contacted DHS to say that she was being abused by her live-in boyfriend and needed someplace to go. DHS took Garlington and her children to the Women's Shelter. A month later, DHS learned that Garlington and the children had been asked to leave the shelter and were living with a relative. Approximately two weeks later, Garlington contacted DHS again to advise that she and the children were homeless and unable to stay at her mother's house because the mother was living with a man who had sexually abused Garlington when she was a girl. DHS offered shelter services to Garlington, but she refused to go to another shelter. DHS exercised a seventy-two-hour hold on the children at that point and filed a petition for emergency custody and dependency-neglect in July 2015, alleging the children were dependent-neglected as a result of abandonment, neglect, or parental unfitness.
The circuit court adjudicated the children dependent-neglected in September 2015 based on the court's "acceptance of the parties' stipulation to a finding of dependency-neglect because the allegations in the petition and affidavit[3] are true and correct. Specifically, but not limited to, the mother did and does not have appropriate housing to care for the juveniles." The goal of the case was established as reunification with a concurrent goal of adoption. Garlington was ordered, among other things, to keep DHS informed of her residence and place of employment and to obtain and maintain stable housing and employment.
In two separate review orders, the court found that Garlington was partially complying with the case plan, although she was still living with her mother, which the court deemed an inappropriate placement for the children. By the time of the permanency-planning hearing in July 2016,[4] Garlington's compliance had worsened. She continued to live in her mother's house, where she admitted she could not take the children back into her custody; she had not attended visitation or seen the children in over two months; she was unemployed; she did not maintain contact with DHS; and she was not attending counseling. The court determined that the goal of reunification *919 was no longer appropriate and made adoption the primary goal, with a concurrent goal of relative placement.
DHS filed a petition for termination of Garlington's parental rights alleging four statutory grounds: twelve-months failure to remedy; failure to provide significant material support; subsequent other factors; and aggravated circumstances. With respect to the twelve-month failure-to-remedy ground, DHS specifically alleged that Garlington had been living with relatives or in homeless shelters throughout the case and had been unable to secure an apartment on her own.
After DHS filed its petition, the circuit court ordered the parties to attend dependency-neglect mediation in October 2016. The court continued any hearing on the termination petition until February 2017 and then again to March 2017, as the parties requested additional time to conduct a staffing.
The court conducted two hearings on the petition for termination of Garlington's parental rights: the first in March 2017 and the second in May 2017. At the conclusion of the March termination hearing, the circuit court granted Garlington's motion for directed verdict on the aggravated-circumstances ground, and the court also dismissed the failure-to-support and subsequent-factors grounds. Garlington's counsel then argued that DHS had failed to prove the twelve-month failure-to-remedy ground. Although counsel conceded that the children had been out of the house more than twelve months and that Garlington still did not have a home to which she could return with the children, counsel argued that DHS had failed to make meaningful efforts to assist Garlington with correcting the condition of her housing. The court did not specifically rule on counsel's arguments to dismiss the twelve-month failure-to-remedy ground. The court did express reservations about safely returning the children to Garlington, however, specifically stating:
Being unsure of the answer to that question, the court held its ruling in abeyance, set another hearing date, and ordered DHS to develop some kind of visitation between Garlington and the children to see how they interacted and whether she had the ability to parent properly.
[and] the amount of time that they've been in state custody[.]" The court therefore granted the termination petition based on the twelve-month failure-to-remedy ground.
In its written termination order, the circuit court found that throughout the case, Garlington had stayed with various relatives and friends but had "never obtained a stable, permanent residence or even maintained *920 a residence safe for the juveniles to return to." The court also noted that DHS had offered to assist Garlington with obtaining appropriate housing for the children by offering to pay a deposit and the first month's rent, but Garlington was unable to obtain housing. The court further commented that parents are typically given twelve to fifteen months to remedy the causes of removal, but DHS had worked with Garlington for more than two years, yet she still had not demonstrated an ability to safely parent her children. Remarking that the children had been in foster care for 674 days, the circuit court found that it was in their best interest that Garlington's parental rights be terminated. Garlington filed a timely notice of appeal.
II. Standard of Review
On appeal, we review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of Human Servs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122.
Our case law recognizes that the termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. In termination-of-parental-rights matters, the circuit court is required to follow a two-step process by finding first that the parent is unfit and second that termination is in the best interest of the child. T.J. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997) ; Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2017). The second step requires consideration of whether the termination of parental rights is in the children's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A). As a result, DHS bears a heavy burden in seeking to terminate the relationship of parent and child. Fox, supra.
III. Discussion
Garlington does not challenge the circuit court's best-interest findings. Instead, she argues only that the circuit court's findings regarding the statutory basis for termination were clearly erroneous. The circuit court terminated on the statutory ground codified in Arkansas Code Annotated section 9-27-341(b)(3)(b)(i)(a) , which provides that termination may be based on a finding "[t]hat a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent."
Garlington concedes that the children were adjudicated dependent-neglected and that they had continued out of her custody for more than twelve months. Garlington therefore focuses her argument on the last two elements of the statutory ground, contending that DHS failed to prove (1) that she failed to remedy the causes of removal and (2) that such failure occurred *921 despite "meaningful efforts" by DHS to rehabilitate her. We disagree.
Here, by the end of the second termination hearing, Garlington had had more than twenty-two months to remedy her housing issue. She had made some improvements in this regard, but she was still unable to have the children safely returned to her because of her failure to remedy this matter. In
Trout v. Arkansas Department of Human Services , 84 Ark. App. 446, 146 S.W.3d 895 (2004), we affirmed the circuit court's termination of the parental rights of a mother because she had not been stable for a sufficient amount of time to indicate reunification was possible. We held that to give the mother more time to comply would only ignore the fact that she had consistently failed to comply with the court's order. Id. In Camarillo-Cox v. Arkansas Department of Human Services , 360 Ark. 340, 201 S.W.3d 391 (2005), our supreme court affirmed a circuit court's termination although the mother had shown significant improvement and had eventually met nearly all the case-plan requirements, because those improvements were not made until the "eleventh hour" of the case. "[E]vidence that a parent begins to make improvement as termination becomes more imminent will not outweigh other evidence demonstrating a failure to comply and to remedy the situation that caused the children to be removed in the first place." Id. at 355, 201 S.W.3d at 401. Likewise, here, Garlington did not remedy the condition that caused removal until the eleventh hour, and even then, she did not completely meet the requirements set by the circuit court because she still could not move into the apartment. The circuit court did not err in weighing her compliance throughout the case and concluding that her last-minute efforts were not sufficient. See Beck v. Ark. Dep't of Human Servs. , 2017 Ark. App. 467, at 7, 528 S.W.3d 869, 873.
DHS's support, and Garlington never showed that ability because of an inconsistent employment history.
*922 We are certainly sympathetic to Garlington's argument that DHS could have done more to help her with her housing situation. However, we are unable to find that the circuit court's factual findings were clearly erroneous. See Edwards v. Ark. Dep't of Human Servs. , 2010 Ark. App. 739, at 17, 379 S.W.3d 609, 618. Furthermore, Garlington's failure to appear at the second termination hearing was a matter to be weighed by the court regarding her efforts at remedying the cause of removal and the meaningful efforts of DHS to rehabilitate. We will not substitute our judgment for that of the circuit court in matters of weighing the evidence. See Madison v. Ark. Dep't of Human Servs. , 2013 Ark. App. 368, at 8, 428 S.W.3d 555, 560.
Affirmed.
The circuit court also terminated the parental rights of Brandon Bowie, the children's father, but he is not a party to this appeal.
She does not challenge the circuit court's best-interest findings in support of the termination.
The children had been removed from Garlington's care for one year by the time of the permanency-planning hearing.
Garlington's therapist indicated that she (Garlington) arrived at the courthouse but became emotional and left before the hearing.