Cite as 2024 Ark. App. 349

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-59

| | |
|---|---|
| FATIMA HASAN<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 29, 2024<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-22-244]<br><br>HONORABLE TJUANA BYRD MANNING, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant, Fatima Hasan, appeals the October 2023 circuit court order that terminated her parental rights to her son, MC, born in April 2022. Fatima's sole argument is that the circuit court committed reversible error by its "wholesale dismissal" of her efforts in the three months leading up to the termination hearing. We affirm.

The Arkansas Department of Human Services (DHS) took emergency custody of MC in April 2022 shortly after he was born because both mother and son tested positive for drugs, including PCP, methamphetamine, and THC. Also, Fatima reported that she had untreated mental-health issues, including depression, PTSD, schizophrenia, and bipolar disorder. DHS did not seek custody of Fatima's six-year-old daughter because she was living with, and being raised by, her maternal grandmother, Tina Hollis. No father or putative

father appeared or participated in this case. Fatima agreed that there was probable cause to support removing MC from her custody.

In June 2022, the circuit court adjudicated the children dependent-neglected due to parental unfitness and neglect. The court ordered a myriad of services to address Fatima's drug addiction, mental-health needs, and parenting deficiencies.[1] She admittedly had not taken mental-health medications since she became pregnant with MC. Instead, she self-medicated with illegal drugs, both before and after her son's birth. The circuit court ordered DHS to more thoroughly vet the maternal grandmother and her home to determine whether it was appropriate for Fatima's daughter. The circuit court informed Fatima that "the clock is ticking" on her time to substantially rehabilitate herself and her circumstances and that the court would determine a permanency plan for her son within a year. Fatima was ordered to abide by the court's orders, participate in the services offered, maintain sobriety, take appropriate medications, maintain stable housing and income, and cooperate with DHS.

Fatima was admittedly slow to respond to services and was not in compliance through the first half of 2023. Fatima was late to the permanency-planning hearing. Although Fatima had attended inpatient drug treatment, she was admittedly still using illegal drugs including "sherm" as recently as three weeks before this hearing. Fatima admitted she needed professional help with her mental health. The circuit court changed the goal for MC to

---

[1]The services included a referral for parenting classes, outpatient substance-abuse treatment, therapy, a mental-health assessment, a medication assessment, a psychological evaluation, and drug screens.

termination of parental rights, finding that Fatima had not made substantial, measurable progress; had not benefitted from the services offered; and had not visited MC enough times to form a bond with him. She participated in only ten of one hundred possible visits. The permanency-planning order was filed in May 2023.[2]

In July 2023, DHS filed a petition to terminate Fatima's parental rights to MC. Also in July, Fatima tested positive for methamphetamine, amphetamine, and THC.

The termination hearing was conducted in September 2023. The DHS caseworker testified that Fatima continued to test positive for drugs throughout the case. Although Fatima completed a psychological evaluation and inpatient drug treatment, she did not follow outpatient recommendations until two or three months before the termination hearing. Fatima would, according to the caseworker, sometimes "just go off the grid." Fatima missed most opportunities to visit with her son, and when they did visit, Fatima would have to be redirected to appropriately parent him. There was no apparent bond between Fatima and her son; he mostly cried during visits.

---

[2]At the permanency-planning stage for MC, the circuit court learned that Fatima's daughter's whereabouts were unknown; the school district had dropped her for nonattendance and listed her as homeless. The circuit court ordered a seventy-two-hour hold on Fatima's daughter to determine whether the maternal grandmother was able to provide for her basic needs and care. The circuit court ordered that home studies and background checks be required for any relative wanting to be considered for placement. The circuit court decided not to set a case-plan goal for Fatima's daughter pending the evidence resulting from a seventy-two-hour hold on her.

DHS's adoption specialist testified that she located 276 possible adoption resources for MC, she knew of no barriers to his being adopted, and she believed it likely that MC would be adopted.

Fatima said she had been living with her maternal aunt for the previous six months. She did not have a job or her own residence. Fatima acknowledged that she had not engaged fully with DHS services the first year or so of the case, but for the previous three months, she was invested in the case plan and serious about reunification. She said she was going to outpatient treatment and therapy classes and taking Zoloft (an antidepressant). Fatima's mother, Tina, believed that Fatima could take care of MC. However, Tina rarely saw Fatima and admitted that her daughter's mind was not stable. Tina said Fatima was diagnosed as a child with several disorders, including ADHD, autism, bipolar disorder, and schizophrenia.

DHS urged the circuit court to terminate parental rights, noting that Fatima had only begun to fully participate in services the last couple of months. The attorney ad litem agreed with DHS, stating that her efforts "in the fifteenth month of a seventeen-month case for a seventeen-month-old child is too little, too late." Fatima's attorney acknowledged the amount of evidence presented against his client but asked for more time for Fatima's mother to become MC's legal guardian because retaining familial relationships was in MC's best interest.

The circuit court found that three statutory grounds listed in Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2023) had been proved: (1) out of custody for a year with failure to remedy; (2) incapacity or indifference to remedy subsequent other factors; and (3) aggravated

4

circumstances, meaning little likelihood that additional services would result in reunification. The circuit court also found it to be in MC's best interest to terminate parental rights, having considered that MC was highly likely to be adopted and that there was potential harm in returning MC to Fatima because of her mental-health issues, drug problems, and instability. The circuit court acknowledged that Fatima had recently begun attending outpatient treatment and was receiving some kind of mental-health treatment, which was good for Fatima, but it was too late for MC because he needs permanency, having been in DHS's custody since he was born.

On appeal, Fatima asserts that the circuit court completely disregarded her progress in the three months prior to the termination hearing. We hold that Fatima has failed to demonstrate reversible error.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Gilbert v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 256, 599 S.W.3d 725. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood that the juvenile will be adopted and of the potential harm that would be caused by returning custody of the child to the parent. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Harris v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 135, 684 S.W.3d 348. We review findings in dependency-neglect proceedings de novo. *Id.* A finding is clearly

erroneous when, although there is evidence to support it, the reviewing court, having considered the entire evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.*

This DHS case was pending for well over a year during which Fatima persistently tested positive for drugs and resisted working the case plan. It was only toward the end of the case, after the goal had been changed to termination, that Fatima began to take the case plan requirements seriously. The circuit court did not clearly err in finding that it was in MC's best interest to terminate parental rights. We agree that in termination proceedings, the circuit court must consider a parent's compliance during the entire dependency-neglect case and the evidence presented at the termination hearing in deciding whether termination is in the child's best interest. Ark. Code Ann. § 9-27-341(a)(4)(B). The circuit court did not ignore Fatima's efforts in the final months of this case; the circuit court acknowledged it. The circuit court determined that her recent improvements were not compelling enough to continue this DHS case. Thus, the circuit court clearly considered and weighed Fatima's compliance throughout the entire case and did not reject her last-minute efforts out of hand. *See Beck v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 467, 528 S.W.3d 869. MC needed permanency, which is the goal of the Juvenile Code, and permanency could not be achieved in a reasonable period of time as viewed from MC's perspective. We hold that the circuit court did not clearly err in terminating Fatima's parental rights to MC.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

6

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.